UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| FIRST BAPTIST CHURCH IN NEWTON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 23-10436-BEM |
| CHURCH MUTUAL INSURANCE CO., | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**MURPHY, J.**

This is an action for insurance coverage for property damage. Plaintiff First Baptist Church in Newton ("First Baptist") brings this action against Defendant Church Mutual Insurance Co. ("Church Mutual"), alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of Massachusetts General Laws Chapter 93A ("Chapter 93A"). First Baptist seeks a declaratory judgment that its loss is covered by the insurance policy provided by Church Mutual, as well as monetary damages and costs. Before the Court now is Church Mutual's motion for summary judgment ("Defendant's Motion"). For the reasons set forth below, Defendant's Motion is DENIED.

**I.     Background**

    **A.     Factual Background**

First Baptist is a church located in Newton, Massachusetts. Dkt. 60 ("Def.'s SOF") ¶ 1. The church was constructed in 1888, and the property has been listed in the National Register of Historic Places since 1982. *Id.* ¶¶ 1–2. It has a bell tower attached to the main church sanctuary,

at the northeast corner of the structure. *Id.* ¶ 3. Due to the church's age, First Baptist assessed potential repairs to the bell tower in 2008 and 2016. *Id.* ¶¶ 4–5. Church Mutual conducted its own inspection of the property around May 2, 2011. Dkt. 65 ("Pl.'s SOF") ¶ 28. The parties dispute the findings and meanings of these assessments and resulting reports, as well as which bell tower repairs First Baptist recognized as needed in the period from 2008 to early 2021. *Id.* ¶¶ 4–10.

On or about April 11, 2021, a stone fell from the bell tower. Def.'s SOF ¶ 11. After this incident, First Baptist engaged an architect and contractor to assess the cause and develop a plan to stabilize the bell tower, including conducting an extensive structural evaluation. *Id.* ¶ 12; Pl.'s SOF ¶ 21. However, before any work could begin,[1] additional stones fell—approximately 25 stones fell on or about March 15, 2022, and approximately 20 stones fell on or about March 20, 2022. Def.'s SOF ¶¶ 15–16; Pl.'s SOF ¶ 25. Shortly thereafter, First Baptist installed an emergency dunnage to prevent further damage. Pl.'s SOF ¶ 26. According to First Baptist, neither the bell tower nor the sanctuary—the large, primary space within a Baptist church where worship services are conducted, which is adjacent to the bell tower—can be used following the falling of the stones from the bell tower. *Id.* ¶¶ 27, 32.

First Baptist's insurance is provided by Church Mutual. Def.'s SOF ¶ 17. In relevant part, the operative policy[2] covers loss for a building's "collapse," which "means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose." Dkt 59-1 (the "Policy") at 26. The Policy

---

[1] Due to the historic status of the property, First Baptist needed to seek review and approval from the City of Newton and the Massachusetts Historical Commission before installing an emergency dunnage. Pl.'s SOF ¶¶ 22–24.

[2] The dispute spans the course of two policy periods, policy number 0209770-02-199566 (effective dates "from 02/14/21 to 02/14/22") and policy number 0209770-02-336567 (effective dates "from 02/14/22 to 02/14/23"). *See* Dkt. 64 ("Pl.'s Opp.") at 3. While these policies contained the same relevant terms, the parties agree that the loss commenced and occurred during the policy period of the former insurance policy, i.e., the policy with effective dates from February 14, 2021, to February 14, 2022 (the "Policy"). *See id.*; Dkt. 59 ("Def.'s Memo.") at 4 n.1, 5 n.3.

2

provides coverage for such a collapse when it is caused by "[d]ecay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse." *Id.*

On or about April 8, 2022, First Baptist notified Church Mutual of its loss and its intention to make a claim under the Policy. Def.'s SOF ¶ 17. On May 17, 2022, Church Mutual issued a reservation of rights letter. *Id.* ¶ 18. On February 3, 2023, Church Mutual disclaimed coverage under the Policy. *Id.* ¶ 19.

### B. Procedural Background

In February 2023, First Baptist initiated this insurance-coverage claim, in which First Baptist alleges that Church Mutual wrongfully denied coverage for a property loss under its insurance policy. Dkt. 1-1. First Baptist has alleged that this wrongful denial constitutes a breach of contract, a breach of the implied covenant of good faith and fair dealing, and a violation of Chapter 93A. *Id.* Church Mutual has now moved for summary judgment. Dkt. 58. The Court heard oral arguments on April 15, 2025, and took the matter under advisement.

## II. Standard of Review

Summary judgment will only be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Grogan v. All My Sons Bus. Dev. LLC*, 552 F. Supp. 3d 142, 145 (D. Mass. 2021) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "To succeed [in a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Grogan*, 552 F. Supp. 3d at 145 (quoting *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990)) (internal quotations omitted).

In Massachusetts, the interpretation of an insurance policy is a question of law that may be decided on summary judgment. *Life Skills, Inc. v. Harleysville Ins. Co.*, 744 F. Supp. 3d 124, 131 (D. Mass. 2024) (quoting *Cummings Props., LLC v. Pub. Serv. Ins. Co.*, 343 F. Supp. 3d 1, 3 (D. Mass. 2018)); *see also Cody v. Conn. Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982) ("The interpretation of an insurance contract is not a question of fact for the jury . . . The responsibility of construing the language of an insurance contract is a question of law for the trial judge, and then for the reviewing court."). "Under Massachusetts law, [courts] construe an insurance policy under the general rules of contract interpretation, beginning with the actual language of the policies, given its plain and ordinary meaning." *AIG Prop. Cas. Co. v. Cosby*, 892 F.3d 25, 27 (1st Cir. 2018) (citation omitted). When a contract is ambiguous, "either where its terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken," the meaning of those terms "normally becomes a matter for the factfinder, and summary judgment is appropriate only if the extrinsic evidence presented about the parties' intended meaning is so one-sided that no reasonable person could decide to the contrary." *Life Skills, Inc.*, 744 F. Supp. 3d at 131 (quoting *Minturn v. Monrad*, 64 F.4th 9, 14 (1st Cir. 2023), and *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 784 (1st Cir. 2011)).

Furthermore, if a term or phrase in an insurance policy can reasonably be interpreted in more than one way, it is "strictly construed against the insurer" and in favor of the insured. *Easthampton Congregational Church v. Church Mut. Ins. Co.*, 916 F.3d 86, 92 (1st Cir. 2019). "[A] term is not ambiguous or construed against the insurer merely because it is not explicitly defined in an insurance policy. Undefined terms may still be unambiguous, just as a term may remain ambiguous despite the insurer's attempt to define it." *Life Skills, Inc.*, 744 F.

4

Supp. 3d at 131 (alteration in original) (quoting *Verveine Corp. v. Strathmore Ins. Co.*, 489 Mass. 534, 539 n.9 (2022)).

With these principles in mind, the insured bears the initial burden of establishing coverage, upon which the burden shifts to the insurer to establish an exclusion from coverage. *Utica Mut. Ins. Co. v. Herbert H. Landy Ins. Agency, Inc.*, 820 F.3d 36, 41 (1st Cir. 2016) (citing *Boazova v. Safety Ins. Co.*, 462 Mass. 346, 351 (2012)). "And if the insurer satisfies that burden, the burden shifts back to the insureds to show an exception to the exclusion holds sway." *Easthampton*, 916 F.3d at 92 (citation omitted).

The First Circuit has noted that "[u]nder Massachusetts law, courts should err on the side of the narrowest plausible interpretation of the exclusion and resolve doubts about the scope of an exclusion in favor of the insured." *Performance Trans., Inc. v. Gen. Star Indem. Co.*, 983 F.3d 20, 25 (1st Cir. 2020) (citing *Hakim v. Mass. Insurers' Insolvency Fund*, 424 Mass. 275, 281 (1997)). Further, under Massachusetts law, "[m]ore specific contract terms ordinarily control over more general contract terms." *Easthampton*, 916 F.3d at 92 (citation omitted). "Therefore, if a policy provision is found to provide for coverage, then general exclusion clauses are inapplicable." *Id.*

## III. Analysis

Church Mutual argues that summary judgment is appropriate on all claims[3] because (1) the falling of stones does not constitute a "collapse" under the Policy and (2) First Baptist had

---

[3] First Baptist brought claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of Mass. Gen. Laws. c. 93A ("Chapter 93A"). Dkt. 1-1 at 5–6. Each of these claims turns on First Baptist's contention that its loss is covered by the Policy. *See id.* As such, a determination on coverage necessarily decides all of First Baptist's claims. *See Chokel v. Genzyme Corp.*, 449 Mass. 272, 276 (2007) (holding that the implied covenant of good faith and fair dealing is only as broad as the contract itself); *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 385 (2005) ("[I]mplied covenant may not be 'invoked to create rights and duties not otherwise provided for in the existing contractual relationship.'" (quoting *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004))); *Philadelphia Indem. Ins. Co. v. Levine*, 2015 WL 4945960, at *6 (D. Mass. May 14, 2015) ("[A] Chapter 93A claim against an insurer fails if it is determined that no coverage exists under the policy." (citing *The Home Ins. Co. v. Liberty Mut. Fire Ins. Co.*, 444 Mass. 599, 608 (2005))).

5

knowledge of structural decay in the bell tower that precludes coverage. *See generally* Dkt. 59 ("Def.'s Memo.").

> A. **The Meaning of "Collapse"**

Church Mutual argues that the loss is not covered because there was not a "collapse" as the Policy defines the term.[4] Def.'s Memo. at 9. The language at issue reads as follows:

> D. ADDITIONAL COVERAGE – COLLAPSE
>
> The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in D. 1. through D. 5. below.
>
> 1. With respect to buildings:
>
>> a. Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;
>>
>> b. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;
>>
>> c. A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;
>>
>> d. A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage, or expansion.
>
> 2. We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the collapse is caused by one or more of the following:
>
>> a. The "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Part;
>>
>> b. Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;
>>
>> . . .

---

[4] Church Mutual concedes that the stones fell "abruptly." Def.'s Memo. at 9.

Policy at 26.

Church Mutual contends that the meaning of "collapse" is not ambiguous because it is defined in the Policy. Def.'s Memo. at 8–9. Relying on a recent Sixth Circuit opinion, Church Mutual argues that because the bell tower has "neither 'fallen down' nor 'caved in,'" by the "plain understanding" of the Policy, there has not been a collapse. *Id.* at 9 (citing *Builders Mut. Ins. Co. v. GCC Constr., LLC et al.*, 2024 WL 5074878, at *4–5 (6th Cir. Dec. 11, 2024)). Church Mutual also argues that "where the only thing that became dislodged and fell was a single stone," it cannot be said that a "part of [the] building" collapsed. Dkt. 66 at 2. Meanwhile, First Baptist contends that the plain language of the Policy indicates that a collapse occurred or that the meaning of "collapse" is ambiguous, and thus should be construed in its favor as the policyholder. Dkt. 64 ("Pl.'s Opp.") at 14–15.

"[A] term may remain ambiguous despite the insurer's attempt to define it."[5] *Verveine*, 489 Mass. at 539 n.9. "Courts in other jurisdictions have analyzed nearly identical policy language[6] and determined it to be reasonably susceptible to more than one interpretation, and therefore, ambiguous." *Life Skills, Inc.*, 744 F. Supp. 3d at 133 (collecting cases). Here, the definition of "collapse" as applied to the facts creates a genuine dispute that renders summary judgment improper. This Court is persuaded by the analysis conducted by another court in this District when addressing similar policy language:

---

[5] Even if the Court were to rely on *Builders Mutual* as Church Mutual suggests, that case explicitly defines falling bricks as a "collapse." *Builders Mutual*, 2024 WL 5074878, at *4 ("Looking at each provision individually, the "collapse" provision thus yields a neat conclusion: Bricks collapse when they fall."); *id.* at *5 ("Now, applying these definitions to this building, some bricks fell when GCC cut a hole in the wall. That's a classic partial collapse as defined by the policy—an 'abrupt falling down . . . of a covered building or structure in whole or in part.'"). Despite Church Mutual's contention, even a single fallen stone could be found by a jury to have been "part" of the bell tower. *See Middlesex Mut. Assur. Co. v. Puerta De La Esperanza, LLC*, 723 F. Supp. 2d. 294, 297 (D. Mass. 2010) ("[A] 'part' of a building may refer to any component of that building.").

[6] Church Mutual agrees that *Life Skills, Inc.* considered the same policy language as is at issue here. Def.'s Memo. at 15.

7

> Sections D.1 and D.2, which Life Skills cites, describe coverage for the "abrupt falling down of . . . any part of a building." [Policy at 165]. This language implies that the policy covers a "partial collapse," such as the partial detachment of the ceramics room floor, especially if caused by "hidden decay" and the room becomes unusable for its intended purpose. [*Id.*] In contrast, [Defendant] references Section D.3 to argue that coverage is excluded because the ceramics classroom floor, although sagged, did not completely collapse to the ground but remained standing—thus characterizing the incident not as a collapse but merely as a "vertical displacement."
>
> The provisions in Section D . . . create internal inconsistencies that would restrict coverage solely to scenarios where an insured's building is in a "flattened form or rubble," thereby contravening "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." . . . If [Defendant] intended for a "collapse" to require the entire building to fall to the ground immediately, this should have been explicitly defined in the Policy. As it stands, the collapse provisions are internally inconsistent and create ambiguity. In Massachusetts, when an insurance policy interpretation is in dispute, "the insured is entitled to the benefit of the one that is more favorable to it."

*Id.* at 134–35 (alterations in original) (citations omitted). In the face of the inconsistencies between provisions in Section D of the Policy, the Policy is ambiguous and must be construed in First Baptist's favor. *See id.* at 135; *Hakim*, 424 Mass. at 271; *Minturn*, 64 F.4th at 14.

Church Mutual attempts to distinguish *Life Skills, Inc.* by explaining that (1) the *Life Skills, Inc.* court did not define collapse as a matter of law because it merely denied a motion for summary judgment; and (2) the case turned on a dispute as to whether the collapse was "abrupt." Def.'s Memo. at 15–16. Church Mutual's first argument fails because as in *Life Skills, Inc.*, this decision is limited to whether Church Mutual has established as a matter of law that a collapse *did not occur*.[7] Church Mutual's second argument fails because the *Life Skills, Inc.* opinion does not turn on the term "abrupt." *See Life Skills, Inc.*, 744 F. Supp. 3d at 134–35. While the parties made

---

[7] This Opinion does not attempt to hold, as a matter of law, that a collapse sufficient to trigger coverage under the Policy occurred. First Baptist must still demonstrate that the fallen stones caused the building to be unusable for its intended purpose. *See* Policy at 26 ("Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose."). But this was not raised in the parties' motion papers and thus is not at issue in the current motion.

8

arguments on this issue, as described above, the *Life Skills, Inc.* court found ambiguity due to the inconsistencies between the provisions in Section D, with which this Court agrees. *Id.* Church Mutual's argument on this point conflates the question of collapse with that of hidden decay.

Finally, Church Mutual contends that there was no collapse because the bell tower still stands. But in the face of the inconsistencies between provisions in Section D of the Policy as described above, the Policy is ambiguous and must be construed in First Baptist's favor. *See id.*; *Hakim*, 424 Mass. at 271; *Minturn*, 64 F.4th at 14. Further, as the Sixth Circuit explained in *Builders Mutual*, that part of the building is still standing does not mean that part of the building did not collapse. *Builders Mutual*, 2024 WL 5074878, at *5. The importance of the bell tower remaining standing—though unusable—is a question of causation and damages, not whether a "collapse" under the Policy has occurred. *See id.* at *6–8. As such, on the record before the Court, the Court cannot conclude that there was no "collapse" as a matter of law, rendering summary judgment inappropriate.

### B. **Hidden Decay**

Church Mutual also argues that there is no coverage under the Policy, which provides coverage for hidden decay, because First Baptist was aware of the "decay"[8] in the bell tower. Def.'s Memo. at 9–13. For its part, First Baptist argues that (1) Church Mutual is precluded from arguing hidden decay in its motion given its prior hearing statements; and (2) the issue of hidden decay is a question of fact subject to genuine dispute. Church Mutual contends that First Baptist misrepresents the record, in that its more complete statement to the court indicated that hidden decay could be resolved on a motion for summary judgment. Dkt. 66 at 4–5.

---

[8] Church Mutual does not appear to contest that the stones' falling was caused by decay. *See* Def.'s Memo. at 9–13 (limiting argument on the issue of "hidden decay" to whether the decay was in fact hidden).

The Court concludes that summary judgment on the issue of hidden decay is inappropriate on the record before it.[9] First Baptist has identified a genuine dispute as to whether the decay's causing of the stones to fall was hidden. *See, e.g.*, Pl.'s Opp. at 17–20 (citing deposition testimony from Church Mutual's engineer that water intrusion between the stones led to deterioration of pins and mortar holding the stones in place and that this damage would not have been visible before the stones fell). While Defendants appear to argue that First Baptist's knowledge of *any* structural decay in the bell tower would preclude coverage, Def.'s Memo. at 9–11 (citing *Cnty. of Delaware v. Travelers Prop. & Cas. Co. of Am.*, 559 F. Supp. 3d 425 (E.D. Pa. 2021)), the decay must be similar enough to conclude that First Baptist was willfully blind to the issue that led to its loss,[10] *Cnty. of Delaware*, 559 F. Supp. 3d at 436–37 ("Moreover, the County cannot meet its burden by simply asserting that it was unaware of the decay at the specific location of the Incident, where it had been repeatedly informed for years by its structural engineering consultant that the *same kinds of decay existed throughout the Garage*." (emphasis added)). Church Mutual identifies no *undisputed* evidence in the record that the structural deficiencies discovered in various assessments

---

[9] The Court notes that Church Mutual did previously suggest, when opposing First Baptist's motion to compel, that it would seek summary judgment only with regards to the issue of collapse, recognizing the import of expert disclosures to the issue of hidden decay. *See* Dkt. 62 at 8:8–16 ("[COUNSEL FOR CHURCH MUTUAL]: Similarly, if the Court were to conclude that this was in fact a collapse, it would likely be the case that there would remain the factual issue of whether the collapse was caused by hidden decay, and again, I would not stand in this court and keep a straight face and say he can't have any discovery on that issue. He'd be entitled to discovery on that issue, but, again, we would be talking at that point of a pretty limited, narrow issue that we could accomplish in short order."); *id.* at 11:9–13 ("[COUNSEL FOR CHURCH MUTUAL]: I am only suggesting that I don't think that the issue with hidden decay is one that is unresolvable on motions for summary judgment and it may be a question -- excuse me. It may be just a question of making sure that the expert witness disclosures are complete."); *see also id.* at 14:9–12 ("[THE COURT]: What I plan to do is if I find that there is a collapse, I want to at least grab a trial date so that we have a firm date and then you can work backward from there in terms of completing the depositions as well as any expert discovery.").

[10] Church Mutual identifies no evidence that the physical deterioration of the bell tower impacted the usability of the bell tower or had any impact on the mortar deterioration that led to the fallen stones. The cited reports do not undisputedly raise issues related to the masonry or mortar from which the Court can conclude, as a matter of law, that First Baptist had knowledge of the decay that caused the falling stones. *See* Pl.'s SOF ¶¶ 4–10 (distinguishing reports' references to repairs needed for various wooden structures from the masonry components at issue here).

and resulting reports had any relation to the alleged collapse or impacted the usability of the structure. *See* Pl.'s SOF ¶¶ 4–10 (disputing Church Mutual's interpretation of evidence and citing to additional evidence); *see also Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009) ("At summary judgment, the court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). As such, on the current record, in the light most favorable to First Baptist, the Court cannot conclude that there is no genuine dispute of fact as to whether the alleged collapse was caused by hidden decay.[11]

## IV.     Conclusion

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. 58) is DENIED.

**So Ordered.**

Dated:  April 17, 2025

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

---

[11] Church Mutual also argues that First Baptist's knowledge of the mortar and masonry deterioration prior to the March 2022 instance of stones' dislodging negates coverage. Def.'s Memo. at 11–13. But having concluded that there is a genuine dispute as to whether the mortar's deterioration prior to the first stone's falling constitutes hidden decay, the Court cannot tease apart the different falling-stones incidents sufficiently to conclude as a matter of law that the loss is not covered under the Policy. Even if the Court were to conclude that First Baptist's knowledge of the mortar problems prior to March 2022 negates what might otherwise be a covered loss, First Baptist would still be entitled to prove that the initial dislodging was a covered loss and make arguments regarding damages.